[No. 17288–3–I.   Division One.   July 6, 1987.]

JUSUF SULEIMAN, *Appellant,* v. EARL P. LASHER III,
ET AL, *Respondents.*

*A. Graham Greenlee,* for appellant.

*Dean A. Messmer* and *Lasher & Johnson,* for respondents.

SCHOLFIELD, C.J.—Jusuf Suleiman appeals the trial court's dismissal of his action against Earl Lasher and A. Kyle Johnson, partners in the law firm of Lasher & Johnson, and one of their (former) employees, Paul Durham, which alleged breach of contract, breach of fiduciary duty and legal malpractice. We affirm.

## FACTS

On June 19, 1979, Suleiman became the judgment creditor of Charles Cantino, doing business as Seattle Bird Importers, Inc., in the amount of $54,002. On May 9, 1980, G. Michael Sweet, of the law firm of Lasher & Johnson, was appointed as receiver of Cantino's property, to ensure collection of the judgment.

The property Cantino was ordered to turn over included the keys and any claim of possession to a bird quarantine station operated by him. On November 4, 1980, Holger Gleim, another Lasher & Johnson employee, who had in fact been acting as receiver instead of Sweet, was appointed receiver in his own right. On December 24, 1980, an order was entered distributing to Suleiman the proceeds from the sale of birds seized from the quarantine station.

On July 14, 1981, Holger Gleim withdrew as receiver, was discharged by the court and his bond exonerated. Gleim is no longer a Lasher & Johnson employee and apparently no longer resides in Washington. The record does not indicate that a successor receiver was ever appointed.

In January 1982, another employee of Lasher & Johnson (alleged by Suleiman to be Paul Durham) assisted an individual named Ron Le Clair in obtaining good title to the quarantine station without turning the proceeds over to Suleiman. According to Lasher & Johnson, James Treadwell, an employee of their firm, represented Le Clair in the

acquisition of the stock of "Foreign Bird Imports, Inc."[1]

Suleiman filed a complaint against Lasher, Johnson and Durham, alleging that they failed to abide by the terms of the order appointing the receiver, which provided that the quarantine station was to be sold for Suleiman's benefit. Further, the complaint alleged that the firm violated CPR DR 4–101(B)(2), prohibiting the use of client confidences, and alleged it failed to exercise appropriate skill and discretion. Suleiman alleged he was damaged in the approximate amount of $30,000, representing the proceeds from the sale of the quarantine station.

Lasher, Johnson and Durham (hereinafter Lasher) moved to dismiss the case with prejudice, pursuant to CR 12(b)(6) and CR 12(c). The trial court granted the motion to dismiss, but denied recovery for attorney's fees. This appeal timely followed.

### STANDARD OF REVIEW

Lasher argues that because matters outside the pleadings were considered by the trial court in making its decision ( i.e., the orders entered in the Suleiman v. Cantino case), the motion to dismiss should be considered as one for summary judgment under CR 56. Lasher further argues that the appropriate standard of review under CR 56 is that the court must determine, accepting the complaint's allegations as true and all reasonable inferences therefrom, whether the defendants were entitled to dismissal as a matter of law.

CR 12(b) reads in pertinent part:

> Every defense, in law or fact, to a claim for relief in any pleading, whether a claim, counterclaim, cross claim, or third party claim, shall be asserted in the responsive pleading thereto if one is required, except that the following defenses may at the option of the pleader be made by motion: . . . (6) failure to state a claim upon which relief can be granted . . . If, on a motion asserting the defense numbered (6) to dismiss for failure of the plead-

---

[1]The relationship between these two transactions is unclear. However, for the purpose of review, Suleiman's allegation must be considered to be true.

ing to state a claim upon which relief can be granted, matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in rule 56, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by rule 56.

CR 12(c) reads as follows:

**Motion for Judgment on the Pleadings.** After the pleadings are closed but within such time as not to delay the trial, any party may move for judgment on the pleadings. If, on a motion for judgment on the pleadings, matters outside the pleadings are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in rule 56, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by rule 56.

Although generally raised at different times during the pretrial period, a motion to dismiss for failure to state a claim and a motion for judgment on the pleadings generally raise identical issues. J. Friedenthal, M. Kane & A. Miller, *Civil Procedure* 294–95 (1985).

As Suleiman correctly asserts, actions are not subject to dismissal under CR 12 if any state of facts could be proved under the complaint which would entitle the plaintiff to relief. *See Halvorson v. Dahl,* 89 Wn.2d 673, 574 P.2d 1190 (1978); *Madison v. General Acceptance Corp.,* 26 Wn. App. 387, 612 P.2d 826 (1980).

However, Washington courts have determined that a motion for judgment on the pleadings is to be considered a motion for summary judgment under CR 56 if the trial court considers matters outside the pleadings in making its decision. *Highline Sch. Dist. 401 v. Port of Seattle,* 87 Wn.2d 6, 548 P.2d 1085 (1976). Additionally, as noted above, CR 12(b) and (c) specifically mention that when the trial court considers matters outside the pleadings, the motion is treated as one under CR 56.

Thus, Lasher's position is correct that appellate court review of this action should treat the trial court's granting

of the motion to dismiss as one for summary judgment.

CR 56(c) reads in pertinent part:

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. . . .

The court must consider the evidence in the light most favorable to the nonmoving party. *Yakima Fruit & Cold Storage Co. v. Central Heating & Plumbing Co.*, 81 Wn.2d 528, 503 P.2d 108 (1972). On review of an order granting summary judgment, the appellate court must "engage in the same inquiry as the trial court." *Wilson v. Steinbach*, 98 Wn.2d 434, 437, 656 P.2d 1030 (1982).

### ABANDONMENT OF CLAIM

Lasher argues that Suleiman has abandoned his first claim of failure to abide by the terms of the receivership order by his statement in his brief that the receivers are not proper defendants. Additionally, Lasher argues that any claim is barred by the statute of limitations and that any claim should have been made at the time of discharge.

Suleiman's complaint states as its first allegation that the defendants are liable to him for the loss of the proceeds of the sale of the quarantine station for reason of:

> Their failure to abide by the terms of the order appointing receiver which provided for the same to be turned over to their agent for sale for Plaintiff's benefit . . .

However, Suleiman argues in his brief that the receivers were not proper defendants because the acts complained of were not those which took place during the course of the receivership. Suleiman concedes in his brief that

> the conduct giving rise to the complaint was not [Holger D. Gleim's] failure to seize the quarantine station during the receivership. . . . [A]s it was understood we would wait for and seize the next shipment of birds to be brought in, the offending conduct is the failure of members of Lasher & Johnson to inform plaintiff that the

quarantine station was being purchased by Ron Le Clair;
. . .

Suleiman further argues that because only the acts of the receiver's former law firm are at issue, no statute of limitations had expired at the time he filed his lawsuit. It is difficult to comprehend how failure to abide by the receivership order can be alleged to have occurred after the receivership was dissolved. Therefore, we find that Suleiman's first claim of failure to abide by the terms of the receivership order is abandoned.

### FIDUCIARY DUTY OF RECEIVER

Suleiman argues that, in essence, the receiver *represented* him, because the receiver's job was to protect Suleiman's interest in this judgment debtor's property, giving rise to an attorney–client relationship and a concomitant fiduciary duty.

A receiver is generally considered to be an officer of the court occupying the position of custodian of the property in receivership. 65 Am. Jur. 2d *Receivers* § 135 (1972). Although a receiver appointed by the court has occasionally been referred to as an agent or representative of the debtor and has also been described as representing the interests of all parties, the general rule is that a receiver is not the exclusive agent or representative of either party to the suit in which he is appointed, and the receiver is not appointed for the benefit of any party, nor does he receive his authority from either party. The parties have no authority over the receiver, and they have no right to determine what liabilities he may or may not incur. 65 Am. Jur. 2d *Receivers* § 138 (1972).

Once a receiver is discharged, he is relieved from all his official liabilities as such. An action cannot be maintained against a receiver, even for the purpose of establishing the validity of a claim, after he has been discharged and has ceased to hold any relationship to the subject property. 66 Am. Jur. 2d *Receivers* § 487 (1973).

In *Cole v. Washington Motion Picture Corp.,* 112 Wash.

548, 192 P. 972 (1920), a creditor who appealed from an order of disallowance had his appeal properly dismissed when he failed to provide notice to all other creditors, although he did serve the receiver. In describing the position that a receiver holds, the court stated as follows:

[H]e performs functions which the court itself is obligated to perform, and, where he is receiver of an insolvent estate, represents the creditors of the insolvent corporation in the same sense and to the same degree that the court appointing him represents them. . . .

*Cole,* at 553.

Similarly, in *Gloyd v. Rutherford,* 62 Wn.2d 59, 60–61, 380 P.2d 867 (1963), the Washington Supreme Court quoted with approval J. High, *Receivers* § 1 (4th ed. 1910), as follows:

[The receiver] is not the agent or representative of either party to the action, but is uniformly regarded as an officer of the court, exercising his functions in the interest of neither plaintiff nor defendant, but for the common benefit of all parties in interest. . . .

Suleiman cites *Cox v. Helenius,* 103 Wn.2d 383, 693 P.2d 683 (1985) for the proposition that a trustee under a deed of trust foreclosure action has a fiduciary obligation to represent both the debtor and the creditor on the underlying obligation. He argues that if this is true for a trustee, it is equally true for a receiver. While there are some similarities between the relative positions of trustee and receiver, there are many differences as well. A receiver is appointed to act in the court's stead, while a trustee is agreed upon by both parties to a contractual transaction. Thus, the fiduciary duty owed by a trustee cannot be required of a receiver. Therefore, we find that no fiduciary duty existed after the receivership was dissolved, and that no attorney–client relationship ever existed between Suleiman and either Sweet or Gleim, the two employees of the law firm of Lasher & Johnson.

### CODE OF PROFESSIONAL RESPONSIBILITY

Suleiman argues that because of this attorney–client

relationship between himself and the receivers, Lasher violated the Code of Professional Responsibility by assisting his client to obtain the quarantine station.

Former CPR DR 4–101 reads in pertinent part:

(B) Except when permitted under sections (C) and (D), a lawyer shall not knowingly during or after termination of the professional relationship to his client:

. . .

(2) Use a confidence or secret of his client to the disadvantage of the client.

(3) Use a confidence or secret of his client for the advantage of himself or of a third person, unless the client consents after full disclosure.

. . .

(D) A lawyer shall exercise reasonable care to prevent his employees, associates, and others whose services are utilized by him from disclosing or using confidences or secrets of a client . . .

Had Suleiman been able to establish that an attorney–client relationship existed between himself and either of the two receivers employed by Lasher & Johnson, this disciplinary rule would certainly apply and, unless Suleiman consented, might well have precluded anyone in the law firm from representing Le Clair in the transaction to obtain title to the quarantine station. However, because this relationship was not established, former CPR DR 4–101 has no application here.

Thus, we find that Suleiman's lawsuit was properly dismissed, and Lasher was entitled to summary judgment as a matter of law.

PEKELIS and THOMPSON, JJ., concur.

Review denied by Supreme Court October 6, 1987.