[No. 86936-7.   En Banc.]
Argued September 27, 2012.     Decided December 6, 2012.

P.E. Systems, LLC, *Respondent*, v. CPI Corporation, *Petitioner*.

*J. Michael Keyes* and *Whitney J. Baran* (of *K&L Gates LLP*), for petitioner.

*Nicholas D. Kovarik* (of *Piskel Yahne Kovarik PLLC*), for respondent.

---

¶1 CHAMBERS, J. — P.E. Systems LLC (PES) offered to analyze and reduce the credit card processing costs of CPI Corporation. The two signed an agreement that appeared to be a contract. CPI later repudiated the contract, disputing its validity. PES sued for breach. CPI attached a copy of the contract to its answer to PES's complaint and then filed a

motion for judgment on the pleadings, arguing the contract was a mere agreement to agree and therefore unenforceable. PES responded to the motion and attached an identical copy of the contract and a PowerPoint presentation it had given to CPI. The trial court found the contract was not binding but merely an agreement to agree and granted CPI's motion, dismissing the case. PES appealed. The Court of Appeals reversed the trial court's dismissal on the pleadings and held both that the contract was enforceable and that CPI had breached the contract. It remanded for entry of judgment in favor of PES and for further proceedings on the issue of damages only. *P.E. Sys., LLC v. CPI Corp.*, 164 Wn. App. 358, 264 P.3d 279 (2011). We affirm the Court of Appeals to the extent it held the contract is a valid contract with an open term, but we reverse the balance of the Court of Appeals' opinion.

## FACTS

¶2 PES offers to reduce the credit card processing costs companies incur. It analyzes merchant credit and debit card sales and expense data and identifies cost savings supposedly tailored to the needs of its clients. Under PES's standard agreement, if the client decides to implement the program, it must pay to PES a consulting fee in the amount of 50 percent of any savings realized. If the client chooses not to implement the program but still realizes some program savings, the client is obligated to pay the same consulting fee on the client's savings for 24 months.

¶3 To determine the amount of savings, if any, PES's contract calls for calculating a client's "Historic Cost" as a baseline from which to make a comparison. Clerk's Papers (CP) at 20. The Historic Cost is defined in paragraph three of a one-page standard contract offered by PES. The Historic Cost is calculated by dividing "total Visa and MasterCard credit and debit card costs . . . by [the] total Visa and MasterCard credit and debit card revenue." *Id.*

While this formula for calculating the Historic Cost is expressly set out in the body of the contract, the contract also states the final number that results from this calculation "will be set forth and mutually agreed to by the parties in Addendum 'A.' " *Id.*

¶4 PES and CPI signed PES's standard agreement laying out these terms. PES began providing consulting services, but a dispute arose at some point after the agreement was signed. For reasons not evident from the record, CPI ended its relationship with PES and refused to pay any consulting fee. PES filed a complaint in superior court, alleging breach of contract. CPI filed an answer to the complaint, to which it attached a copy of the contract. CPI then moved for a judgment on the pleadings, arguing the contract was only an agreement to agree, and therefore unenforceable, because the Historic Cost in Addendum "A" had been left blank. PES responded to the motion, arguing that the contract was simply an agreement with an open term easily and definitively ascertainable and therefore enforceable. PES attached another copy of the contract to its response, along with a PowerPoint presentation it had given CPI that described how its cost saving system works and that included PES's calculation of CPI's Historic Cost. From our review of the record we conclude the trial court did not consider the PowerPoint presentation in its ruling.

¶5 The trial court granted the motion for judgment on the pleadings. It held the blank term rendered the contract an unenforceable agreement to agree. PES appealed. The Court of Appeals reversed the trial court's order, held the contract was enforceable, and held that CPI had breached the contract as a matter of law. *P.E. Sys.*, 164 Wn. App. 358. The Court of Appeals remanded to the trial court solely on the question of damages. We accepted review.

## ANALYSIS

WHAT MAY BE CONSIDERED ON A MOTION ON THE PLEADINGS

¶6 Preliminarily, we must address what material may properly be attached to a motion for judgment on the pleadings under Civil Rule (CR) 12(c).

¶7 The interpretation of court rules is a question we review de novo. *State v. Osman*, 168 Wn.2d 632, 637, 229 P.3d 729 (2010). Likewise, we review a dismissal under CR 12(c) de novo. *Parrilla v. King County*, 138 Wn. App. 427, 431, 157 P.3d 879 (2007).

¶8 We treat a CR 12(c) motion for judgment on the pleadings identically to a CR 12(b)(6) motion to dismiss for failure to state a claim. *Suleiman v. Lasher*, 48 Wn. App. 373, 376, 739 P.2d 712 (1987) (citing JACK H. FRIEDENTHAL, MARY KAY KANE & ARTHUR R. MILLER, CIVIL PROCEDURE 294-95 (1985)). Like a CR 12(b)(6) motion, the purpose is to determine if a plaintiff can prove any set of facts that would justify relief. *Id.* (citing *Halvorson v. Dahl*, 89 Wn.2d 673, 574 P.2d 1190 (1978); *Madison v. Gen. Acceptance Corp.*, 26 Wn. App. 387, 612 P.2d 826 (1980)). The only practical difference between these two motions is timing: a CR 12(b)(6) motion is made after the complaint but before the answer; a CR 12(c) motion is made after the pleadings are closed. *Compare* CR 12(b), *with* CR 12(c).

¶9 The parties disagree over what documents a court may consider for a CR 12(c) motion for judgment on the pleadings. CR 12(c) states:

> **Motion for Judgment on the Pleadings.** After the pleadings are closed but within such time as not to delay the trial, any party may move for judgment on the pleadings. If, on a motion for judgment on the pleadings, matters outside the pleadings are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in rule 56, and all parties shall be given reasonable

opportunity to present all material made pertinent to such a motion by rule 56.

Specifically, the parties dispute whether the Court of Appeals properly applied the language "[i]f . . . matters outside the pleadings are presented to and not excluded by the court, the motion shall be treated as one for summary judgment." CR 12(c).

¶10 The Court of Appeals held the contract is not part of the pleadings, and "you do not make it so by simply attaching it to an answer or complaint." *P.E. Sys.*, 164 Wn. App. at 365. PES argues this holding is correct: the trial court erred in considering matters outside the pleadings without converting the motion to a summary judgment motion. CPI argues that this holding is incorrect: the contract does become part of the pleadings simply by attaching it to the answer or complaint.

¶11 CPI is correct: the contract does become part of the pleadings by simply attaching it. Multiple lines of authority support this conclusion.

¶12 First, one of our other civil rules expressly addresses attachment of documents to pleadings. Under CR 10(c), "[a] copy of any written instrument which is an exhibit to a pleading is a part thereof for all purposes." "Instrument" has a specific legal meaning: "A written legal document that defines rights, duties, entitlements, or liabilities, such as a contract, will, promissory note, or share certificate." BLACK'S LAW DICTIONARY 869 (9th ed. 2009). Thus, by its plain language, CR 10(c) permits a contract to be attached to pleadings for all purposes.

¶13 Second, federal courts have held that the federal version of our CR 10(c), with relevant language nearly identical to our own, permits attachment of contracts to pleadings for the purposes of a Fed. R. Civ. Proc. 12(b)(6) motion. *Rose v. Bartle*, 871 F.2d 331, 339 n.3 (3d Cir. 1989); *see also Tierney v. Vahle*, 304 F.3d 734, 738 (7th Cir. 2002) (holding weight of authority permits attachment of documents such as con-

tracts to pleadings for federal rule 12(b) or 12(c) purposes). But exhibits that stretch the definition of a "written instrument," such as affidavits, are extrinsic evidence that may not be considered as part of the pleadings. *Rose*, 871 F.2d at 339 n.3. Here the exhibit is the contract itself, which fits squarely within CR 10(c)'s term "written instrument."

¶14 Third, some states *require* attachment of any contract to the pleadings. For example, the Michigan Court Rules (MCR) state, "If a claim or defense is based on a written instrument, a copy of the instrument or its pertinent parts must be attached to the pleading as an exhibit" unless certain exceptions apply. MCR 2.113(F)(1). Under Florida's Rules of Civil Procedure (FCR), "[a]ll bonds, notes, bills of exchange, contracts, accounts, or documents upon which action may be brought or defense made, or a copy thereof or a copy of the portions thereof material to the pleadings, shall be incorporated in or attached to the pleading." FCR 1.130(a). In Ohio, the Civil Rules (OCR) require that "[w]hen any claim or defense is founded on an account or other written instrument, a copy of the account or written instrument must be attached to the pleading." OCR 10(D)(1).

¶15 While Washington does not specifically require instruments to be attached to pleadings, our rules permit them to be attached. We hold a contract may be attached to a pleading and that a contract so attached becomes part of the pleading for purposes of any CR 12(b) or CR 12(c) motion. Conversion from a CR 12(b) or CR 12(c) motion to summary judgment is unnecessary if the sole reason for conversion is attachment of a contract or similar instrument to a pleading. We agree with the Court of Appeals that merely attaching a document to a pleading does not necessarily make it admissible or establish that it may be otherwise considered as evidence. However, the contract from which a dispute arises, and the authenticity of which is not contested, may be attached to a pleading and may be considered in a CR 12(b) or CR 12(c) motion. The trial court

was not required to convert the CR 12(c) motion to a summary judgment motion simply because it considered the contract.

¶16 PES and CPI both raise an additional concern. As mentioned above, PES attached a PowerPoint presentation to its response to CPI's CR 12(c) motion. The Court of Appeals held that the PowerPoint presentation was extrinsic evidence and the trial court was not free to "exclude evidence simply to avoid tainting the pleadings in a way that trips the matter into a summary judgment proceeding." *P.E. Sys.*, 164 Wn. App. at 364.

¶17 In contrast to the contract, the PowerPoint presentation appears to be extrinsic evidence offered to clarify the terms of the contract. There are limited circumstances where extrinsic evidence may be admissible for purposes of interpreting a contract. *See generally Hearst Commc'ns, Inc. v. Seattle Times Co.*, 154 Wn.2d 493, 501-04, 115 P.3d 262 (2005) (clarifying the use of extrinsic evidence in contract interpretation in Washington). But once extrinsic evidence is admitted and considered, a motion on the pleadings should be converted to a motion of summary judgment. CR 12(c) ("If, on a motion for judgment on the pleadings, matters outside the pleadings are presented to and not excluded by the court, the motion shall be treated as one for summary judgment."). However, because our reading of the record is that the trial court did not consider the PowerPoint presentation, we find no error in the trial court's refusal to convert the motion for judgment on the pleadings into a summary judgment motion.[1]

---

[1] The parties dispute whether the trial court did or did not exclude the PowerPoint presentation in considering the CR 12(c) motion. Had the trial court considered the presentation, it arguably would have fallen outside the "written instrument" CR 10(c) permits to be attached to a pleading, and the motion should probably have been converted to a summary judgment motion. But the trial court made clear in its oral ruling that it did not consider the PowerPoint presentation in making its CR 12(c) ruling and that it had in fact meant to strike the exhibit. Report of Proceedings at 31-33. The lack of an actual order excluding the presentation is more like a clerical error than an error needing appellate correction.

## INTERPRETATION OF THE CONTRACT

¶18 The second question is whether the Court of Appeals or trial court erred in deciding the matter of the contract's enforceability on the evidence presented. The trial court held the agreement was unenforceable as an agreement to agree and entered a dismissal in favor of defendant CPI. The Court of Appeals held the agreement was enforceable and that CPI had breached the agreement and remanded for further proceedings on the sole question of damages. In resolving this issue, it is important to remember that the only motion before the trial court was CPI's motion for judgment on the pleadings arguing the contract was an unenforceable agreement to agree.

¶19 "Washington follows the objective manifestation test for contracts." *Keystone Land & Dev. Co. v. Xerox Corp.*, 152 Wn.2d 171, 177, 94 P.3d 945 (2004) (citing *Wilson Court Ltd. P'ship v. Tony Maroni's, Inc.*, 134 Wn.2d 692, 699, 952 P.2d 590 (1998)). Contract formation requires an objective manifestation of mutual assent of both parties. *Id.* at 177-78 (citing *Yakima County (W. Valley) Fire Prot. Dist. No. 12 v. City of Yakima*, 122 Wn.2d 371, 388, 858 P.2d 245 (1993)). "Moreover, the terms assented to must be sufficiently definite." *Id.* at 178 (citing *Sandeman v. Sayres*, 50 Wn.2d 539, 541, 314 P.2d 428 (1957)). Mutual assent to definite terms is normally a question of fact for the fact finder. *Id.* at 178 n.10 (citing *Sea-Van Invs. Assocs. v. Hamilton*, 125 Wn.2d 120, 126, 881 P.2d 1035 (1994)). But a question of fact may be determined as a matter of law if reasonable minds could not differ. *Hartley v. State*, 103 Wn.2d 768, 775, 698 P.2d 77 (1985) (citing *LaPlante v. State*, 85 Wn.2d 154, 531 P.2d 299 (1975); *Balise v. Underwood*, 62 Wn.2d 195, 381 P.2d 966 (1963)).

¶20 Preliminarily, both parties agree the Court of Appeals erred in directing entry of judgment against CPI. Both agree the Court of Appeals' finding that CPI did not

dispute key allegations in PES's complaint was incorrect and that the portion of the Court of Appeals opinion determining breach by CPI should therefore be reversed. They disagree as to the remainder of the Court of Appeals' opinion.

¶21 CPI asks us to reverse the Court of Appeals and reinstate the trial court's original judgment that the agreement is unenforceable. PES asks us to reverse the Court of Appeals' entry of judgment against CPI but uphold its determination that the contract is enforceable and remand to the trial court for a trial on the merits.

¶22 Apart from a standard enforceable contract with all material terms agreed to, we have identified three basic types of agreements regarding which disputes may easily arise.

¶23 "The first type of agreement is an agreement to agree. An agreement to agree is 'an agreement to do something which requires a further meeting of the minds of the parties and without which it would not be complete.' Agreements to agree are unenforceable in Washington." *Keystone*, 152 Wn.2d at 175-76 (citation omitted) (quoting and citing *Sandeman*, 50 Wn.2d at 541-42).

¶24 "The second type of agreement is an agreement with open terms. Under an agreement with open terms, the parties intend to be bound by the key points agreed upon with the remaining terms supplied by a court or another authoritative source, such as the Uniform Commercial Code." *Id.* at 176 (citing E. Allan Farnsworth, *Precontractual Liability and Preliminary Agreements: Fair Dealing and Failed Negotiations*, 87 COLUM. L. REV. 217, 253 (1987)).

¶25 "The third type of agreement is a contract to negotiate. In a contract to negotiate, the parties exchange promises to conform to a specific course of conduct during negotiations . . . . No Washington court has directly addressed whether a contract to negotiate is independently enforceable." *Id.*

¶26 The focus of the dispute in this case is the fact that the contract incorporates by reference an addendum. The addendum is supposed to state what CPI's Historic Cost is. CP at 20. The Historic Cost provides a baseline against which any savings that PES's plan provides can be measured.[2] *Id.*

¶27 According to CPI, the agreement is an agreement to agree, with a further meeting of the minds required to make it complete. CPI argues that without the Historic Cost figure in the addendum, PES cannot calculate what the savings were, if any, and the agreement is unenforceable because the figure was left to be determined. According to PES, the agreement is a contract with an open term (or alternatively, simply an enforceable contract). PES argues that the addendum is not necessary to determine the Historic Cost because the agreement states clearly that "Client's Historic Cost will be determined, based upon the data provided by Client [for the past 12 months], by taking Client's total Visa and MasterCard credit and debit card costs divided by Client's total Visa and MasterCard credit and debit card revenue which reflects Client's accurate Historic Cost." *Id.* The Court of Appeals agreed with PES.

¶28 We agree with PES and the Court of Appeals. A valid contract requires the parties to objectively manifest their mutual assent to all material terms of the agreement. *See Wash. Shoe Mfg. Co. v. Duke*, 126 Wash. 510, 516-17, 218 P. 232 (1923). All material terms were agreed to by the parties here. The nonnegotiable formula for calculating CPI's Historic Cost was agreed to by both parties, and the formula results in a mathematically determined number.[3] Because

---

[2] For reasons that are not clear from the record, the addendum was not completed at the signing of the agreement; however, paragraph two of the agreement requires CPI to forward its merchant processing agreements and statements within 14 days of the agreement to "facilitate" the calculation of the "Client's Historic Cost." CP at 20.

[3] According to PES, the only reason for the addendum is so that each party can check the other's math—the parties are not actually agreeing to a Historic Cost, they are agreeing that they have correctly calculated the Historic Cost.

the Historic Cost is a specific number determined by a specific mathematical formula, the blank addendum is immaterial for the purpose of determining whether the contract is valid; it is an open term that can easily be calculated. If there is a dispute between the parties with respect to the calculation of the Historic Cost, the dispute can be resolved by the trial court.

### DISMISSAL ON A MOTION FOR JUDGMENT ON THE PLEADINGS

¶29 Mutual assent is usually a question of fact that cannot be determined on the pleadings. Here, however, the parties agreed that PES would provide consulting services to CPI and that CPI would pay to PES 50 percent of any savings CPI realized in its credit and debit card expenses. This savings was referred to as "Program Cost Savings" over CPI's Historic Cost of credit and debit card expenses. CP at 20. The parties agreed to the formula for calculating the Historic Cost. *Id.* To the extent the contract provided that the parties were yet to agree on the calculation of the Historic Cost, it is little different from parties agreeing to payment based upon square footage, time, materials, or other formulas commonly agreed to by parties as a basis for determining the final cost of a contract.

¶30 At the very least, the agreement before us is an agreement with an open term; if there is a disagreement over that term, the trial court can resolve the issue. However, based upon the record before us, we are unable to go as far as the Court of Appeals. We hold only that the trial court erred in granting the motion to dismiss on the pleadings.

### CONCLUSION

¶31 Again, the only issue before us is whether PES's complaint should be dismissed on the pleadings. Dismissal under CR 12(c) "is appropriate only if it is beyond doubt that the plaintiff cannot prove any set of facts to justify recovery. In making this determination, a trial court must

presume that the plaintiff's allegations are true and may consider hypothetical facts that are not included in the record." *Parmelee v. O'Neel*, 145 Wn. App. 223, 232, 186 P.3d 1094 (2008) (citing *Burton v. Lehman*, 153 Wn.2d 416, 422, 103 P.3d 1230 (2005); *Suleiman*, 48 Wn. App. at 376), *overruled in part on other grounds by* 168 Wn.2d 515, 229 P.3d 723 (2010). Mutual assent is normally a question of fact but may be determined as a matter of law if reasonable minds could reach only one conclusion. *Keystone*, 152 Wn.2d at 178 n.10 (citing *Ruff v. County of King*, 125 Wn.2d 697, 703-04, 887 P.2d 886 (1995) (quoting *Hartley v. State*, 103 Wn.2d 768, 775, 698 P.2d 77 (1985))). Both parties attached a copy of the same contract. The contract on its face demonstrates mutual assent to all material terms and appears to be a valid contract. The trial court erred in granting the motion to dismiss on the pleadings. But it was also error for the Court of Appeals to determine enforceability and breach. We reverse and remand to the trial court for further proceedings consistent with this opinion.

MADSEN, C.J., and C. JOHNSON, OWENS, FAIRHURST, J.M. JOHNSON, STEPHENS, WIGGINS, and GONZÁLEZ, JJ., concur.