FILED
COURT OF APPEALS
DIVISION II

2015 FEB 10 AM 8: 56

STATE OF WASHINGTON
BY_____
        DEPUTY

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

# DIVISION II

| | |
|---|---|
| HAFID TAHRAOUI, an individual, | No. 44829-7-II |
| Appellant, | |
| v. | |
| FRANKLIN BROWN, RUSTIN WILDER, ERIN ORBITS, JOHN and JANE DOES 1-4 individually, and in his or her official Capacity, PIERCE COUNTY, a municipal corporation, PIERCE COUNTY SHERIFF, a county agency; and PIERCE COUNTY PROSECUTOR, a county agency, | UNPUBLISHED OPINION |
| Respondents. | |

JOHANSON, C.J. — Hafid Tahraoui appeals from a superior court's order dismissing his claims for malicious prosecution, abuse of process, and intentional infliction of emotional distress or "outrage" under CR 12(c). We hold that the superior court erred by dismissing Tahraoui's malicious prosecution claim because he alleged sufficient facts to preclude CR 12(c) dismissal. But we hold that the superior court did not err by dismissing Tahraoui's abuse of process claim because the alleged abuse was merely the institution of the process itself, nor did the court err by dismissing Tahraoui's intentional infliction of emotional distress claim because the alleged

No. 44829-7-II

offensive conduct was not extreme and outrageous. We hold further that the Pierce County Sheriff's Department is not a proper party to this action and, therefore, must be dismissed. Accordingly, we affirm in part, reverse in part, and remand for further proceedings consistent with this opinion.

FACTS

In May 2008, Tahraoui bought a generator that Eric Pate advertised for sale on "Craigslist."[1] After that purchase, Tahraoui bought several additional tools and also asked if Pate's forklift was for sale. When Tahraoui returned the next day, a man named "Shelly"[2] was conducting a garage sale at the residence, and he told Tahraoui that Pate would be available shortly. Clerk's Papers (CP) at 56. But before Tahraoui could speak to Pate, he saw Pate, visibly upset, leave the home. Tahraoui bought several items from the garage sale, including a trailer hitch for $70.

The next day, Pate telephoned Tahraoui, told him that the hitch was not for sale, and asked for its immediate return. Tahraoui refused because Shelly sold it to him. Pate contacted the sheriff's department to report that Tahraoui stole the hitch. Deputy Sheriff Franklin Brown called Tahraoui, and according to Tahraoui, left the following voicemail:

> "Hafid, this is Deputy Brown with the Pierce County Sheriff's Department. You took the trailer hitch from [Pate] from his house. I'll bet that you will return the hitch before I get my hand on you and put you in the Pierce County Jail. If you want to contact me call 911 and ask for Deputy Brown."

---

[1] Because this case involves a CR 12(c) dismissal on the pleadings, the facts are drawn and summarized from Tahraoui's complaint and we must assume the truth of those facts pursuant to the court rule.

[2] Tahraoui asserts that Shelly is Pate's stepfather. Deputy Brown does not dispute this contention directly, but refers to Shelly only as "a third party." Neither party provides a surname, so Shelly is used throughout.

CP at 31. Tahraoui returned Deputy Brown's call, told Brown that he had purchased the hitch, and implored Deputy Brown to hear his version of the events. Notwithstanding Tahraoui's explanation, Deputy Brown allegedly threatened to arrest Tahraoui. Tahraoui denied Deputy Brown's request for his home address.

After speaking with Deputy Brown, Tahraoui spoke with Lieutenant Rustin Wilder of the sheriff's department who promised to investigate Tahraoui's complaint relating to Brown's "bias" and "mishandling" of the theft claim. According to Tahraoui, Lieutenant Wilder attempted to deceive Tahraoui by suggesting that Tahraoui come to the South Hill Precinct to make a statement about his complaints. Tahraoui believed that Lieutenant Wilder's request was a ruse designed to facilitate Tahraoui's arrest. Tahraoui claimed that he relayed these suspicions to Lieutenant Wilder, who momentarily tried to hide his intentions, but ultimately admitted that Tahraoui was facing arrest for "multiple crimes including theft and extortion." CP at 32-33.

Tahraoui maintained that Lieutenant Wilder accused him of lying and that Lieutenant Wilder attempted to coerce prosecutors to elevate the severity of Tahraoui's charges in retaliation for Tahraoui's complaints. Tahraoui also asserted that Deputy Brown deliberately forwarded a false report to the prosecuting attorney by refusing to disclose his knowledge that Tahraoui paid for the hitch.

Over the following weeks, according to Tahraoui, other deputies from the sheriff's department called him, again threatening arrest, and on one occasion, deputies visited his work place. Tahraoui claimed that he avoided arrest by "ke[eping] him self [sic] out of reach." CP at 33. Tahraoui maintained that he lived in fear of imminent arrest over the course of the next several months, limiting his movement and avoiding Pierce County. Tahraoui stated that he hoped that

his problem with the sheriff would "go away over time." CP at 33. But in March of 2009, Tahraoui received a criminal complaint charging him with theft, a charge which prosecutors apparently refused to drop despite Tahraoui's request. Tahraoui was arraigned, but the charges were subsequently dismissed with prejudice.

Tahraoui brought suit against Deputy Brown, Lieutenant Wilder, Erin Orbits, John and Jane Does 1-4, Pierce County, Pierce County Sheriff's Department, and the Pierce County Prosecuting Attorney's Office (collectively "the County") alleging a number of federal[3] and state law causes of action, including those discussed below.[4] Before the superior court, the County moved for dismissal on the pleadings under CR 12(c).[5] The superior court considered the County's motion for judgment on the pleadings, Tahraoui's response in opposition to that motion, and the County's reply. Finding that Tahraoui failed to allege facts capable of sustaining his claims, the superior court entered an order dismissing Tahraoui's case with prejudice. Tahraoui appeals.

---

[3] The case was removed to the United States District Court for the Western District of Washington. The district court dismissed each of Tahraoui's federal claims and remanded to the superior court for consideration of his remaining state law claims.

[4] The record is not clear as to what role Orbits occupied nor does it contain any reference to John and Jane Does 1-4.

[5] CR 12(c) provides,
> **Motion for Judgment on the Pleadings.** After the pleadings are closed but within such time as not to delay the trial, any party may move for judgment on the pleadings. If, on a motion for judgment on the pleadings, matters outside the pleadings are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in rule 56, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by rule 56.

## ANALYSIS

### I. STANDARD OF REVIEW

We review a dismissal under CR 12(c) de novo, examining the pleadings to determine whether the claimant can prove any set of facts, consistent with the complaint that would entitle the claimant to relief. *Parrilla v. King County*, 138 Wn. App. 427, 431, 157 P.3d 879 (2007). And we treat a CR 12(c) motion for judgment on the pleadings identically to a CR 12(b)(6) motion to dismiss for failure to state a claim. *Suleiman v. Lasher*, 48 Wn. App. 373, 376, 739 P.2d 712 (citing *Jack H. Friedenthal, Mary Kay Kane & Arthur R. Miller, Civil Procedure* 294-95 (1985)), *review denied*, 109 Wn.2d 1005 (1987). Like a CR 12(b)(6) motion, the purpose is to determine if a plaintiff can prove any set of facts that would justify relief. *Suleiman*, 48 Wn. App. at 376 (citing *Halvorson v. Dahl*, 89 Wn.2d 673, 574 P.2d 1190 (1978)). "'In making this determination, a trial court must presume that the plaintiff's allegations are true and may consider hypothetical facts that are not included in the record.'" *P.E. Sys., LLC v. CPI Corp.*, 176 Wn.2d 198, 210-11, 289 P.3d 638 (2012) (quoting *Parmelee v. O'Neel*, 145 Wn. App. 223, 232, 186 P.3d 1094 (2008), *rev'd in part*, 168 Wn.2d 515, 229 P.3d 723 (2010)).

### II. MALICIOUS PROSECUTION

Tahraoui contends that the trial court erred in dismissing his claim for malicious prosecution because he alleged sufficient facts to demonstrate that Deputy Brown did not act in good faith, lacked probable cause, and failed to conduct a meaningful investigation.[6] The County

---

[6] Tahraoui also argues that the superior court should have stricken "or at least disregarded" portions of Deputy Brown's CR 12(c) motion statement of facts because it contained misleading statements. Br. of Appellant at 11. Because our review is de novo, and we are required to consider the facts and the evidence in a light most favorable to the nonmoving party, the facts relied on here are from Tahraoui's complaint.

responds that Tahraoui's malicious prosecution claim fails because the existence of probable cause, which was present in this case, is a complete defense to an alleged claim for malicious prosecution. We hold that the trial court erred by dismissing Tahraoui's claim for malicious prosecution because he alleged sufficient facts that, if proven, could potentially establish the elements of malicious prosecution.

## A. RULES OF LAW

To maintain an action for malicious prosecution, a plaintiff must allege and prove that (1) the prosecution was instituted or continued by the defendant, (2) there was want of probable cause for the institution or continuation of the proceeding, (3) the proceeding was instituted or continued through malice, (4) the proceeding was terminated on the merits in favor of the plaintiff or was abandoned, and (5) plaintiff suffered injury as a result of the prosecution. *Bender v. City of Seattle*, 99 Wn.2d 582, 593, 664 P.2d 492 (1983). Although the malicious prosecution plaintiff must prove all required elements, malice and want of probable cause constitute the gist of a malicious prosecution action; as such, proof of probable cause is an absolute defense. *Hanson v. City of Snohomish*, 121 Wn.2d 552, 558, 852 P.2d 295 (1993); *Brin v. Stutzman*, 89 Wn. App. 809, 819, 951 P.2d 291, *review denied*, 136 Wn.2d 1004 (1998).

## B. ANALYSIS

Tahraoui argues that he alleged sufficient facts that demonstrate that probable cause was absent because Deputy Brown was careless in conducting his investigation and because he did not provide the prosecuting attorney with a full and fair disclosure, in good faith, of all material facts known to him. The County contends that probable cause existed to believe that Tahraoui

committed the crime of theft[7] based on statements submitted by Pate and corroborating evidence from the phone call with Tahraoui himself notwithstanding an allegedly insufficient investigation and the existence of an affirmative defense.

The County correctly asserts that the existence of an affirmative defense does not vitiate probable cause. *McBride v. Walla Walla County*, 95 Wn. App. 33, 40, 975 P.2d 1029, 990 P.2d 967 (1999). It is equally correct that Washington does not recognize a claim for negligent investigation by members of law enforcement. *Fondren v. Klickitat County*, 79 Wn. App. 850, 862, 905 P.2d 928 (1995). And in the context of a malicious prosecution claim, Washington courts have long held that probable cause, which is a complete defense to a claim for malicious prosecution, is deemed established as a matter of law,

> "[i]f it clearly appears that the defendant, before instituting criminal proceedings against the plaintiff, made to the prosecuting attorney a full and fair disclosure, in good faith, of all the material facts known to him, and that the prosecutor thereupon preferred a criminal charge and caused the arrest of the accused."

*Bender*, 99 Wn.2d at 593 (quoting *Peasley v. Puget Sound Tug & Barge Co.*, 13 Wn.2d 485, 499-50, 125 P.2d 681 (1942)). But the corollary to this rule is that if any issue of fact exists as to whether or not the prosecuting witness did fully and truthfully communicate to the prosecuting attorney all of the facts and circumstances within his knowledge, then the issue is submitted to a jury. *Bender*, 99 Wn.2d at 594 (quoting *Peasley*, 13 Wn.2d at 499-500).

---

[7] A person commits the crime of theft when he or she wrongfully obtains or exerts unauthorized control over property of another with the intent to deprive that person of the property. RCW 9A.56.020(1)(a).

Here, Tahraoui asserts that the charges filed against him were predicated on disclosures that were not full and fair. Specifically, Tahraoui contends that Deputy Brown did not disclose the fact that Tahraoui had purchased the hitch. Assuming the truth of the alleged facts as we must under CR 12(c), Tahraoui can conceivably establish want of probable cause. Because Tahraoui alleges that Deputy Brown did not make a full and fair disclosure of all the facts known to him, Tahraoui could potentially prove a set of facts that would justify relief. *Suleiman*, 48 Wn. App. at 376.

Tahraoui also alleges facts that appear to support the necessary malice element. Tahraoui asserts that Wilder vindictively pursued charges against him in retaliation for Tahraoui's disparaging remarks about Wilder's subordinates. Again presuming the truth of those allegations, a combination of Tahraoui's claims combined with hypothetical facts that we are entitled to consider pursuant to CR 12(c) also render Tahraoui's establishment of that element conceivably possible. *CPI Corp.*, 176 Wn.2d at 210-11 (we presume the truth of the allegations and may consider hypothetical facts not in the record).

Malice may be inferred from lack of probable cause and from proof that the investigation or prosecution was undertaken with improper motives or reckless disregard for the plaintiff's rights. *Youker v. Douglas County*, 162 Wn. App. 448, 464, 258 P.3d 60, *review denied*, 173 Wn.2d 1002 (2011). But malice may not be inferred from the lack of probable cause alone; for the inference of malice to be justified, the plaintiff must also demonstrate some affirmative acts disclosing at least some feeling of "'bitterness, animosity or vindictiveness towards the appellant.'" *Youker*, 162 Wn. App. at 464 (internal quotation marks omitted) (quoting *Moore v. Smith*, 89 Wn.2d 932, 943, 578 P.2d 26 (1978)). The "reckless disregard" that can support an

8

inference of malice requires proof of bad faith, a higher standard than negligence. *State v. Chenoweth*, 160 Wn.2d 454, 468, 158 P.3d 595 (2007). And impropriety of motive may be established in cases of this sort by proof that the defendant instituted the criminal proceedings against the plaintiff (1) without believing him to be guilty, or (2) primarily because of hostility or ill will toward him, or (3) for the purpose of obtaining a private advantage as against him. *Bender*, 99 Wn.2d at 594.

Tahraoui asserts that "Wilder was mad at the Plaintiff because he complained about Brown's actions." CP at 38. If, as Tahraoui claims, Lieutenant Wilder vindictively pursued charges against Tahraoui in retaliation for Tahraoui's aspersions regarding Deputy Brown, Tahraoui would demonstrate affirmative acts disclosing bitterness or animosity. *Youker*, 162 Wn. App. at 464. And if Lieutenant Wilder instituted criminal proceedings against Tahraoui without believing him to be guilty, Tahraoui could establish the kind of improper motive that supports an inference of malice. *Bender*, 99 Wn.2d at 594 (quoting *Peasley*, 13 Wn.2d at 502).

Accordingly, Tahraoui alleged sufficient facts to preclude CR 12(c) dismissal when viewed in a light most favorable to Tahraoui as the nonmoving party. The trial court erred by dismissing his malicious prosecution claim on the pleadings.

## II. ABUSE OF PROCESS

Tahraoui argues that he submitted sufficient facts to support his abuse of process claim because Lieutenant Wilder and Deputy Brown instituted criminal proceedings in furtherance of an ulterior motive, namely, their desire to coerce Tahraoui into returning the trailer hitch. We hold that an abuse of process claim does not withstand scrutiny if the alleged abuse was simply the institution of the process itself.

## A. RULES OF LAW

To prove the tort of abuse of process, the party must show both "'(1) the existence of an ulterior purpose to accomplish an object not within the proper scope of the process, and (2) an act in the use of legal process not proper in the regular prosecution of the proceedings.'" *Saldivar v. Momah*, 145 Wn. App. 365, 388, 186 P.3d 1117 (2008) (quoting *Mark v. Williams*, 45 Wn. App. 182, 191, 724 P.2d 428, *review denied*, 107 Wn.2d 1015 (1986)), *review denied*, 165 Wn.2d 1049 (2009). Abuse of process is the misuse or misapplication of the process after the initiation of the legal proceeding for an end other than that which the process was designed to accomplish. *Loeffelholz v. Citizens for Leaders with Ethics & Accountability Now (C.L.E.A.N.)*, 119 Wn. App. 665, 699-700, 82 P.3d 1199, *review denied*, 152 Wn.2d 1023 (2004). But the "'mere institution of a legal proceeding even with a malicious motive does not constitute an abuse of process.'" *Momah*, 145 Wn. App. at 388 (quoting *Fite v. Lee*, 11 Wn. App. 21, 27-28, 521 P.2d 964, *review denied*, 84 Wn.2d 1005 (1974)).

## B. ANALYSIS

Tahraoui argues that he alleged sufficient facts to show that the County misused the legal process to accomplish an ulterior purpose—the return of the trailer hitch to Pate. We disagree.

Importantly, Tahraoui does not complain of any abuse of the process occurring after the institution of the proceeding. "'[T]he gist of [an abuse of process] action is the misuse or misapplication of the process, *after it has once been issued*, for an end other than that which it was designed to accomplish.'" *Loeffelholz*, 119 Wn. App. at 699 (quoting *Batten v. Abrams*, 28 Wn. App. 737, 745, 626 P.2d 984, *review denied*, 95 Wn.2d 1033 (1981)). That is to say, the action requires "'a form of extortion, and it is what is done in the course of negotiation, rather than the

issuance or any formal use of the process itself, which constitutes the tort.'" *Loeffelholz*, 119 Wn. App. at 699-700 (quoting *Batten*, 28 Wn. App. at 746).

Here, Tahraoui alleged only that the institution of the criminal proceeding against him constituted an abuse of process because it was done with an ulterior purpose to accomplish an object not within the proper scope of the process. The facts show nothing about process having been abused "after it ha[d] once been issued." *Loeffelholz*, 119 Wn. App. at 699. Tahraoui argues that *Loeffelholz* and *Momah* are distinguishable because the abuse of process actions involved in those cases were counterclaims raised by defendants rather than claims raised by the plaintiff. Tahraoui offers no explanation and no citation to authority to support the proposition that a cause of action in the form of a counterclaim should be treated differently than an identical action brought by a plaintiff when the essential elements remain the same. We hold that Tahraoui's claim fails because he alleges only malicious institution of a legal proceeding, which, alone, does not establish an abuse of process claim. Therefore, the trial court did not err in dismissing Tahraoui's abuse of process claim.

### III. INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

Tahroui argues that the trial court erred in dismissing his intentional infliction of emotion distress or "outrage" claim because he was "deprived of his freedom of movement," unable to go to work, fearful of his imminent arrest, and because he suffered emotional distress. Br. of Appellant at 23. We hold that Tahraoui's claim fails because he failed to allege facts that establish extreme and outrageous conduct beyond mere indignities or threats.

## A. RULES OF LAW

To prevail on a claim of intentional infliction of emotion distress, a plaintiff must show (1) extreme and outrageous conduct, (2) intentional or reckless infliction of emotional distress, and (3) the plaintiff actually suffers severe emotional distress. *Kloepfel v. Bokor*, 149 Wn.2d 192, 195, 66 P.3d 630 (2003). In order for conduct to constitute the tort of outrage, it must be "'so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.'" *Wolf v. Scott Wetzel Servs., Inc.*, 113 Wn.2d 665, 677, 782 P.2d 203 (1989) (internal quotation marks omitted) (quoting *Guffey v. State*, 103 Wn.2d 144, 146, 690 P.2d 1163 (1984), *overruled on other grounds by Babcock v. State*, 116 Wn.2d 596, 809 P.2d 143 (1991)). The conduct must be more than insults, indignities, threats, annoyances, petty oppressions, or other trivialities. *Kirby v. City of Tacoma*, 124 Wn. App. 454, 474, 98 P.3d 827 (2004), *review denied*, 154 Wn.2d 1007 (2005).

## B. ANALYSIS

Tahraoui claims that the conduct to which he was subject rose to a level above a mere threat of arrest "[b]ecause those threat [sic] were eminent [sic] and caused the plaintiff to go in hiding." CP at 43. We disagree.

An examination of cases where our courts have upheld a claim for intentional infliction of emotional distress reveals that the acts about which Tahraoui complains do not constitute extreme and outrageous conduct. For example, in *Kloepfel*, Kloepfel's former boyfriend threatened to kill her, threatened to kill the man she was dating if she continued seeing him, called her home 640 times, called her work 100 times, called the homes of men she knew numerous times, and repeatedly drove past her house at all hours. 149 Wn.2d at 194-95. The evidence showed that this

12

conduct severely disrupted Kloepfel's life and made it impossible for her to carry on a normal dating relationship. *Kloepfel*, 149 Wn.2d at 194. And there was affirmative evidence that this conduct caused Kloepfel to suffer symptoms of emotional distress, including nervousness, sleeplessness, hypervigilance, and stomach upset.[8] *Kloepfel*, 149 Wn.2d at 195.

There, the court concluded that no rational person could endure this constant harassment without suffering severe emotional distress. *Kloepfel*, 149 Wn.2d at 202; *see also Grimsby v. Samson*, 85 Wn.2d 52, 60, 530 P.2d 291 (1975) (finding outrage where, as a result of the defendant doctor's actions, the plaintiff was required to helplessly witness "'the terrifying agony and explicit pain and suffering of his wife while she proceeded to die right in front of his eyes . . . because of his inability to secure any medical care or treatment for his wife'").

Here, there were a total of three arguably harassing, threatening, or otherwise annoying phone calls, one of which Tahraoui himself initiated. On one occasion, deputies sought to speak to Tahraoui at his place of employment. Although he alleges that his emotional distress resulted from constant fear of an arrest he considered imminent, Tahraoui was never actually contacted by law enforcement in person nor was he arrested. The conduct about which Tahraoui complains is not so "'outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.'" *Wolf*, 113 Wn.2d at 677 (quoting *Guffey*, 103 Wn.2d at 146).

---

[8] Unlike a claim for negligent infliction of emotional distress, the *Kloepfel* court held that a claim of intentional infliction of emotional distress does not require proof of "objective symptomatology" or medical diagnosis. 149 Wn.2d at 194. Accordingly, the fact that Tahraoui alleges only mental and emotional distress, does not, by itself, bar recovery.

Accordingly, we hold that Tahraoui failed to allege sufficient facts to sustain his claim for intentional infliction of emotional distress. Therefore, the trial court did not err in dismissing Tahraoui's intentional infliction of emotional distress claim.

## IV. PIERCE COUNTY SHERIFF'S DEPARTMENT NOT PROPER PARTY

Finally, we address the County's position that the Pierce County Sheriff's Department must be dismissed from the lawsuit because, unlike Pierce County itself, the sheriff's department is not an entity capable of being sued.

The legislature has expressly stated that counties may be sued, RCW 36.01.010, but our courts have determined that county departments cannot be sued unless the laws creating those departments allow them to be sued directly. *Roth v. Drainage Improvement Dist. No. 5, of Clark County*, 64 Wn.2d 586, 588, 392 P.2d 1012 (1964). Thus, to determine whether an entity has the capacity to sue or be sued, we examine the legislative enactments providing for its establishment. *Roth*, 64 Wn.2d at 588.

Chapter 36.28 RCW establishes the county sheriff. The chapter outlines the duties, powers, functions, and limitations of the office. *See* RCW 36.28.010, .020, .110, .150. But nothing in the statute demonstrates that the legislature intended to create the Pierce County Sheriff's Department as a legal entity, separate and distinct from the county itself, with the capacity to sue and be sued.[9]

---

[9] That is not to say that a sheriff or other member of a sheriff's department cannot be individually liable for acts done in his or her official capacity. *See* RCW 4.16.080(5), .110.

When asked to resolve similar questions, other courts in this state have concluded that the county with which these departments are associated is the proper party for purposes of legal action.[10]

In holding that a county council is not a separate legal entity capable of being sued, Division One of this court determined that it was the intent of the legislature that in any legal action involving a county, the county itself would be the party to sue or be sued. *Nolan v. Snohomish County*, 59 Wn. App. 876, 883, 802 P.2d 792 (1990), *review denied*, 116 Wn.2d 1020 (1991). Similarly, in *Broyles v. Thurston County*, 147 Wn. App. 409, 427-28, 195 P.3d 985 (2008), we held that Thurston County, rather than the Thurston County Prosecuting Attorney's Office, was the proper party in an employment discrimination lawsuit.[11]

Furthermore, Tahraoui cites no authority and advances no argument to dispute the contention that the sheriff's department should be dismissed. Tahraoui merely responds that he "has already served the Pierce County Sheriff [Paul] Pastor with [a] summons and complaint and would substitute the Defendant Pierce [C]ounty [S]heriff's [D]epartment for defendant Pierce [C]ounty [S]heriff." Br. of Appellant at 24. Because we are presented with no legal authority that

---

[10] *See also Worthington v. Westnet*, No. 90037-0, 2015 WL 276401, at *7 (Wash. Jan. 22, 2015) (Yu, J., dissenting) (discussing several cases where counties were proper defendants when enabling statutes of various parties did not create separate legal entities).

[11] *See also Bradford v. City of Seattle*, 557 F. Supp. 2d 1189, 1207 (W.D. Wash. 2008) (citing *Nolan* in support of the conclusion that a plaintiff must name a county or city if it seeks to challenge the actions of a local governmental unit such as a city police department).

the Pierce County Sheriff's Department may be sued directly, it must be dismissed as a named party to the current action.[12]

## CONCLUSION

We reverse the dismissal of Tahraoui's malicious prosecution claim, but affirm the trial court's dismissal of his abuse of process and intentional infliction of emotional distress claims. In addition, we remand for dismissal of the Pierce County Sheriff's Department and further proceedings consistent with this opinion.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

Johanson, C.J.

JOHANSON, C.J.

We concur:

BJORGEN, J.

MELNICK, J.

---

[12] Although it does not dispute that it has capacity to be sued, Pierce County nevertheless contends that it should also be dismissed from the suit because Tahraoui has failed to establish liability on the part of any agent or employee of Pierce County and, therefore, Pierce County is not vicariously liable. But as we have explained, Tahraoui has alleged sufficient facts to preclude dismissal of his malicious prosecution claim pursuant to CR 12(c). Accordingly, whether Pierce County is liable has not been determined and, therefore, Pierce County remains a proper party to this action.