# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| JEANNETTE SIMONTON and RYAN KELSO, each on their own behalf and on behalf of similarly situated others,<br><br>Appellants,<br><br>v.<br><br>WASHINGTON STATE HEALTH CARE AUTHORITY; and SUE BIRCH, director of the Washington State Health Care Authority and chair of the Public Employees Benefits Board and School Employees Benefit Board, in her official capacity,<br><br>Respondents. | No. 86988-4-I<br><br>DIVISION ONE<br><br>PUBLISHED OPINION |

BIRK, J. — The Washington State Health Care Authority (HCA) denied coverage to Jeanette Simonton and Ryan Kelso for medications prescribed to treat obesity, based on an exclusion in the HCA's Uniform Medical Plan (UMP) for prescription drugs to treat obesity. On behalf of a putative class, Simonton and Kelso argue that denying coverage because the prescription was to treat obesity, a recognized disability, rather than because of any "evidence-based" or other "legitimate clinical justification," amounted to discrimination in "benefit design . . . because of . . . present or predicted disability," in violation of RCW 48.43.0128(1)(a). The superior court dismissed their claims, reasoning that a regulation, WAC 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, specifically authorized the exclusion. However, the

regulation only establishes minimum benefits that plans must offer, and does not address whether the plan benefit design is discriminatory. The regulation does not defeat as a matter of law Simonton and Kelso's claims that the plan benefit design was discriminatory in violation of RCW 48.43.0128(1)(a). We therefore reverse dismissal of their claims. We do not hold that Washington plans must cover prescription drugs to treat obesity, but only that discovery may proceed and Simonton and Kelso may attempt to show through evidence that the UMP's exclusion of coverage was discriminatory. An exclusion is not discriminatory if it is based on "appropriately utilizing reasonable medical management techniques," or if it excluded "a service that is not medically necessary." RCW 48.43.0128(2), (5).

I

Because we are reviewing rulings on a motion to dismiss for failure to state a claim upon which relief can be granted under CR 12(b)(6) and a motion for judgment on the pleadings under CR 12(c), we accept as true the factual allegations contained in the complaint and may consider hypothetical facts supporting the claim. Wash. Trucking Ass'ns v. Emp't Sec. Dep't, 188 Wn.2d 198, 207, 393 P.3d 761 (2017).

Simonton and Kelso were state employees and "enrollees in [HCA's] health benefit plan(s) in the State of Washington," here the UMP. The HCA's "2023 UMP Classic [Public Employees Benefits Board] (PEBB) Certificate of Coverage," lists "[e]xcluded drugs and products," which "include, but are not limited to, prescription drugs for . . . [o]besity (or weight loss)." This exclusion applies "even if the services are medically necessary." Some obesity treatments are covered in certain

2

circumstances, such as "bariatric surgery" or "[n]utrition counseling and therapy," but the plan excludes "[a]ny . . . drugs . . . for weight control, weight loss, or obesity treatment."

Simonton and Kelso allege they each were diagnosed with obesity by a treating physician and received a prescription for medication to treat the diagnosis of obesity. Simonton was informed that " 'medications used for weight loss are in a category of medications that are not covered under your prescription benefit' " and was "provided no other basis for the denial" such as a "determination that the treatment was not medical necessity or experimental/investigational." Kelso similarly "submitted a request for preauthorization to [the HCA], which was denied based solely on the exclusion."

Simonton and Kelso filed a putative class action complaint against the HCA. They say the obesity exclusion "is a form of benefit-design discrimination targeted at disabled individuals with obesity." Under RCW 48.43.0128(1)(a), a health carrier may not, in its benefit design or implementation, "discriminate against individuals because of their . . . present or predicted disability." And under the Washington Law Against Discrimination (WLAD), ch. 49.60 RCW, obesity is recognized as a disability. Taylor v. Burlington N. R.R. Holdings, 193 Wn.2d 611, 615, 444 P.3d 606 (2019). Simonton and Kelso argue that excluding coverage for prescription medication to treat obesity is prohibited discrimination on the basis of disability. They asserted claims for breach of contract and violation of the WLAD.

The superior court dismissed the breach of contract claim under CR 12(b)(6), and later dismissed the WLAD claim under CR 12(c). Interpreting WAC

3

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 as "specifically authoriz[ing] health plans to exclude prescription drugs for the treatment of obesity," the court reasoned that, as something that is expressly allowed, excluding treatment for obesity "is not illegal discrimination." In addition, as to the WLAD claim, the superior court ruled that Simonton and Kelso had not alleged disparate treatment because of disability, because they did not allege that the plan covered prescription drugs for weight loss for some persons, but not those within the protected class. To hold otherwise, the court reasoned, would require health plans "to cover every treatment for every impairment that meets [the] WLAD's broad definition of disability." Simonton and Kelso appeal.

II

Courts "treat a CR 12(c) motion for judgment on the pleadings identically to a CR 12(b)(6) motion to dismiss for failure to state a claim." P.E. Sys., LLC v. CPI Corp., 176 Wn.2d 198, 203, 289 P.3d 638 (2012). For both, we review de novo whether "a plaintiff can prove any set of facts that would justify relief." Id.

A

Two Washington statutory provisions generally bar discrimination in insurance, with certain carveouts. The WLAD guarantees "[t]he right to be free from discrimination" based on, among other statuses, "the presence of any sensory, mental, or physical disability," and this includes "[t]he right to engage in insurance transactions." RCW 49.60.030(1)(e). The insurance code, title 48 RCW, states in relevant part that, notwithstanding any provision contained in title 48 RCW to the contrary, "[t]he amount of benefits payable, or any term, rate, condition, or type of coverage may not . . . be restricted, modified, excluded, or

4

reduced on the basis of the presence of any disability of the insured or prospective insured." RCW 48.30.300(1).

Among the carveouts, a WLAD proviso states that a practice that is "not unlawful" under three provisions of the insurance code "does not constitute an unfair practice for the purposes of this subparagraph." RCW 49.60.030(1)(e). Each of those provisions—RCW 48.30.300, 48.44.220, and 48.46.370—prohibits certain kinds of discrimination, with certain other carveouts. The WLAD proviso exempts those carveouts from the WLAD. Relevant here is RCW 48.30.300, which generally prohibits certain kinds of discrimination, but provides a carveout for "fair discrimination on the basis of sex, or marital status, or the presence of any disability when bona fide statistical differences in risk or exposure have been substantiated." RCW 48.30.300(2). But this carveout is subject to exceptions, including under RCW 48.43.0128. Id. So, the "fair discrimination" authorization is eliminated—and the general prohibition against discrimination is not subject to the exception—if the discrimination is prohibited by RCW 48.43.0128.[1]

This provision deals specifically with health insurance. RCW 48.43.0128 adopts as Washington law a prohibition against discrimination analogous to one in the Patient Protection and Affordable Care Act (ACA), Pub. L. No. 111–148, 124 Stat. 119 (2010). Generally, the ACA "bars insurers from taking a person's health

---

[1] Unlike an insurer-issued plan, the UMP's certificate of coverage is "[s]elf insured by the State of Washington." The HCA is not a "health carrier" as defined by RCW 48.43.005(31)(j) or WAC 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(18)(i). But "[e]ach health plan that provides medical insurance" offered under the code chapter chartering the HCA is "subject to the provisions of RCW . . . 48.43.0128." RCW 41.05.017. Thus, the UMP is subject to RCW 48.43.0128.

5

into account when deciding whether to sell health insurance or how much to charge." King v. Burwell, 576 U.S. 473, 479, 135 S. Ct. 2480, 192 L. Ed. 2d 483 (2015). The ACA also prohibits certain kinds of discrimination. Before the ACA, an insurer could generally "design plans to offer or exclude benefits as it saw fit," so far as federal law was concerned. Schmitt v. Kaiser Found. Health Plan of Wash., 965 F.3d 945, 948 (9th Cir. 2020). Under the ACA, an individual shall not be "excluded from participation in, be denied the benefits of, or be subjected to discrimination under, any health program or activity, any part of which is receiving Federal financial assistance," on grounds prohibited by four federal anti-discrimination statutes. 42 U.S.C. § 18116(a). As a result, the ACA prohibits discrimination in the design of plan benefits. Schmitt, 965 F.3d at 954. The ACA "does not guarantee individually tailored health care plans," but it "imposes an affirmative obligation not to discriminate in the provision of health care—in particular, to consider the needs of disabled people and not design plan benefits in ways that discriminate against them." Id. at 955.

RCW 48.43.0128 imposed a similar prohibition against discrimination as a matter of Washington law. A covered health carrier may not "[i]n its benefit design or implementation of its benefit design, discriminate against individuals because of their age, expected length of life, present or predicted disability, degree of medical dependency, quality of life, or other health conditions." RCW 48.43.0128(1)(a). However, the law "may [not] be construed to prevent a carrier from appropriately utilizing reasonable medical management techniques," and it may not be construed to "mandate coverage of a service that is not medically necessary."

6

RCW 48.43.0128(2), (5). Finally, the law grants rule-making authority to the Office of the Insurance Commissioner (OIC). RCW 48.43.0128(7)-(8).

Simonton and Kelso acknowledge that the plan may exclude coverage based on "evidence-based, clinical justifications." The plan excludes services that are "not medically necessary for the diagnosis and treatment of injury or illness or restoration of physiological functions and are not covered as preventive care." Among other things, to be considered "medically necessary," a level of service, supply, intervention, prescription drug or prescription drug dose must be appropriate considering the potential benefits and harm to the member, known to be effective in improving health outcomes, and cost-effective compared to alternative interventions, including no intervention. Determining medical necessity includes consideration of scientific evidence, and whether "the benefits and harms relative to the costs represent an economically efficient use of resources for members with this condition."

Simonton and Kelso's claims were not denied based on these factors. Simonton and Kelso maintain that excluding coverage for a treatment because it is for obesity is unlawfully discriminatory where it lacks "any legitimate clinical justification." They are supported by the plain language of the nondiscrimination statute, under which a covered health carrier may not "[i]n its benefit design or implementation of its benefit design, discriminate against individuals because of their . . . present or predicted disability . . . or other health conditions." RCW 48.43.0128(1)(a). The nondiscrimination statute allows excluding coverage for services to treat a disability for an undefined range of valid reasons, for instance

7

because they are experimental, not effective, or not cost-effective (among other reasons), but it prohibits excluding coverage for services simply because they are to treat that disability. To do so would discriminate "because of" that disability.

B

The HCA responds that a regulation implementing the nondiscrimination statute, WAC 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, expressly authorizes excluding services to treat obesity. Section 5642(1)(b) states, "A health benefit plan may, but is not required to, include . . . as part of the EHB-benchmark[2] package . . . [o]besity or weight reduction or control," WAC 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(1)(b)(viii), and says the same of "[w]eight loss drugs," WAC 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(6)(b)(ii). The HCA interprets the regulation as expressly authorizing the exclusion of services for obesity or weight reduction, says that this is an implementation of RCW 48.43.0128(1)(a), and implies that the regulation amounts to rulemaking that excluding these services is not a violation of the nondiscrimination statute. Simonton and Kelso argue that section 5642 does not determine compliance with the nondiscrimination requirement, which is a separate requirement with which plans must independently comply. They say section 5642 serves a narrower purpose of establishing only benefit minimums. The background of the ACA supports Simonton and Kelso's argument.

Under the ACA, a covered health insurance issuer "shall ensure" that its coverage "includes the essential health benefits package" required under 42 U.S.C. § 18022(a). 42 U.S.C. § 300gg-6(a). The ACA required the Secretary of

---

[2] " 'EHB-benchmark plan' means the set of benefits that an issuer must include in nongrandfathered plans offered in the individual or small group market." WAC 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.

Health and Human Services (HHS) to define "essential health benefits" in 10 categories. 42 U.S.C. § 18022(b)(1)(A)-(J). In defining essential health benefits, HHS was to, among other things, "not . . . design benefits in ways that discriminate against individuals because of their age, disability, or expected length of life," and "take into account the health care needs of diverse segments of the population, including women, children, persons with disabilities, and other groups." 42 U.S.C. § 18022(b)(4)(B)-(C). The ACA relied on the "actuarial value" of the benefits to recognize four "levels of coverage." 42 U.S.C. § 18022(d)(1), (2)(A).

Under federal regulations, providing essential health benefits means providing benefits "substantially equal" to an "EHB-benchmark" plan. 45 C.F.R. § 156.115(a)(1). States may establish an EHB-benchmark plan by starting with a "base-benchmark" plan and updating it to meet ACA standards. 45 C.F.R. § 156.100, .100(b). Federal regulations allow an issuer of a plan to "substitute benefits for those provided in the EHB-benchmark plan," but require that any substitute benefit be actuarially equivalent, allow states to prohibit substitute benefits within the same EHB category, and prohibit substitution between EHB categories. 45 C.F.R. § 156.115(b)(1)(i), (2). The OIC first established the Washington benchmark plan in regulations adopted in 2013. WSR 13-15-025.

In the 2013 regulations, the OIC defined essential health benefits in former WAC 284-43-878 (2013). The language whose import the parties dispute largely dates from the original regulations and remains similar in current section 5642. One essential health benefit category that a plan "must cover" is " 'ambulatory patient services.' " WAC 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(1). The regulation directs that an insurer

9

classify certain services under this category "[f]or purposes of determining a plan's actuarial value." Id. It lists services that a plan "must include" and classify as ambulatory patient services. WAC 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(1)(a). Then, it lists services that a plan "may, but is not required to, include" as part of the benchmark package. WAC 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(1)(b). If a plan includes these benefits, "the issuer should not include" them "in establishing actuarial value for the ambulatory category."[3] Id. The services that may be included, are not required to be included, and if included may not be used in actuarial value include "[o]besity or weight reduction or control," with certain exceptions. WAC 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(1)(b)(viii). Likewise, both former WAC 284-43-878(6)(b)(ii) (2013) and WAC 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(6)(b)(ii) identify "[w]eight loss drugs" as services that a plan may, but is not required to, include as part of the EHB-benchmark package, and may not include in establishing the actuarial value for the prescription drug category.

A clear focus of section 5642 is on "determining a plan's actuarial value." E.g. WAC 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(1). Section 5642 specifies certain benefits that a plan must include. Then, it specifies benefits that a plan may include. It then explains that the latter benefits may not be included in determining the plan's actuarial value. Thus, section 5642 accomplishes two things clearly, both of which relate to the actuarial value of a plan. First, it requires plans to cover essential health benefits, and second, it prevents certain other benefits from counting towards the plan's actuarial value.

---

[3] It originally read, "These services . . . should not be included in establishing actuarial value for this category." Former WAC 284-43-878(1)(b).

This serves the ACA's goal of covering essential health benefits. Further, specifying benefits that may not be included in actuarial value is consistent with federal law allowing states to prohibit the substitution of benefits "within the same EHB category." 45 C.F.R. § 156.115(b)(2). And it is consistent with the principle that a plan must "provide coverage that is substantially equal to the EHB-benchmark plan," where "substantially equal" requires that each EHB category be a meaningful health benefit and deliver value substantially equal to the EHB-benchmark plan both in the aggregate and category-by-category. WAC 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(1)(a)-(b). By preventing coverage for obesity treatment from adding to the actuarial value for ambulatory patient services, section 5642 ensures that coverage cannot be reduced for essential health benefits without reducing the actuarial value of the plan and its categorization under the ACA.

But these background purposes do not support that section 5642 also means that a plan providing minimum benefits is not discriminatory. Schmitt came to the same conclusion with respect to the ACA's nondiscrimination requirement, adopting federal regulators' position that "compliance with federal and state law regarding essential health benefits did not guarantee compliance with the ACA's nondiscrimination requirement." 965 F.3d at 956. The nondiscrimination requirement of RCW 48.43.0128 must be met independently of compliance with the essential health benefits mandates of section 5642.

C

The HCA's arguments to the contrary are not convincing.

11

1

The HCA relies on the fact that section 5642 lists the nondiscrimination statute, RCW 48.43.0128, among the statutory authority that it implements. The HCA implies that section 5642 amounts to a rule that excluding coverage for obesity and weight loss is not discriminatory under RCW 48.43.0128. The history of the two provisions signals otherwise. Section 5642 allowed exclusion of coverage for obesity and weight loss and prevented their counting towards actuarial value years before Washington enacted the nondiscrimination requirement.

The OIC first promulgated the relevant language now appearing in section 5642 in 2013.[4] Six years later, in 2019, the legislature first enacted the nondiscrimination provisions in RCW 48.43.0128. That provision included new rulemaking authority. RCW 48.43.0128(7). The OIC relied on RCW 48.43.0128 to amend section 5642 in 2020, published at Washington State Register 20-03-114, with the purpose to "implement the legislative directives" in the bill that created RCW 48.43.0128. Wash. St. Reg. 20-03-114 (citing LAWS OF 2019, ch. 33); see LAWS OF 2019, ch. 33, § 15. This amendment made no changes to the longstanding provisions defining essential health benefit categories, and their prohibitions on using services for obesity and weight loss to contribute to actuarial

---

[4] Published at Washington State Register 13-15-025, former WAC 284-43-878 (2014) defined the essential health benefit categories. In 2015, at Washington State Register 15-20-042, the OIC set an expiration for former WAC 284-43-878, and established former WAC 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 (2017). And in 2016, at Washington State Register 16-01-081, the OIC recodified former WAC 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 as section 5642.

value.  See WAC 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(1)(b)(viii), (6)(b)(ii).  Among other changes not relevant here, WSR 20-03-114 added a new paragraph requiring benefits to be consistent with federal rules in effect on January 1, 2017.  WAC 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(12). These enactments signal intent to adopt a Washington baseline for essential health benefits with a nondiscrimination requirement consistent with federal standards in effect on January 1, 2017.

The text of section 5642 distinguishes between benefits that must be included and those that may be included or excluded but cannot count towards actuarial value, which serves the ACA's purposes in mandating baseline benefits and comparability between benefit levels.  Yet nothing in the text signals that the distinction was also meant to be determinative of discrimination in benefit design. When the OIC promulgated the distinction in 2013, the nondiscrimination rule existed only as a federal requirement, whose scope is exclusively a federal question.  Schmitt, 965 F.3d at 956-57 ("But even if a state required its benchmark plan to incorporate nondiscrimination principles, whether or not it complied with section 1557 is a question of federal law on which we owe the state no deference.").  When Washington added its own nondiscrimination requirements in 2019 and 2020, they did not transform preexisting rules serving different purposes into now also serving to define what is or is not discrimination.[5]

---

[5] The parties refer us to the OIC's January 16, 2020 concise explanatory statement relating to its rulemaking implementing the 2019 legislation.  OFF. OF INS. COMM'R, MATTER NO. R2019-10, CONCISE EXPLANATORY STATEMENT; RESPONSIVENESS SUMMARY; RULE DEVELOPMENT PROCESS; AND IMPLEMENTATION PLAN (2020). With reference to section 5642's permitting the exclusion of treatment for hearing loss, obesity and other services, three commenters asked the OIC to "[m]ake it clear that the non-discrimination section applies to all categories of

2

This conclusion forecloses the HCA's argument that Simonton and Kelso are challenging agency rulemaking and are therefore limited to making a challenge under the Administrative Procedure Act (APA), ch. 34.05 RCW.

With exceptions not relevant here, the APA establishes the exclusive means for judicial review of agency action. RCW 34.05.510; Lakeside Indus., Inc. v. Dep't of Revenue, 1 Wn.3d 150, 155, 524 P.3d 639 (2023). This includes judicial review of challenges to a regulation based on the theory that the implementing agency has exceeded its statutory authority. See RCW 34.05.570(2)(c), (3)(b), (4)(c)(ii) (courts may grant relief under the APA when an agency rule, order, or other action exceeds the statutory authority of the agency). Section 5642 does not determine the question of discrimination. Simonton and Kelso are not challenging the validity of section 5642 in asserting that their plan design violated RCW 48.43.0128. Their claim does not fall under the APA.

3

The HCA also points to legislative action that it says shows that it is legally prohibited from adding coverage for prescription drugs for the treatment of obesity to the UMP. First, the legislature considered, but did not enact, bills that would

---

essential health benefits." Id. at 11-12. In response, the OIC said that the new nondiscrimination provision was "a statement of general application" and it was "not necessary" to restate it in every specific category. After describing the structure of the rule, the OIC concluded, "The rule does not state that the excluded benefits may continue to be excluded; instead it states that they are improperly excluded." Id. at 12. The OIC's answer does not determine the issue before us. But our holding that RCW 48.43.0128 is independent of EHB benefit minimums is consistent with the OIC's answer.

have added coverage for prescription drugs to treat obesity. See S.B. 6182, 68th Leg., Reg. Sess. (Wash. 2024); S.B. 5353, 69th Leg., Reg. Sess. (Wash. 2025); H.B. 1326, 69th Leg., Reg. Sess. (Wash. 2025). However, "[n]othing can be inferred from the legislature's inaction on [a] proposed bill." City of Medina v. Primm, 160 Wn.2d 268, 280, 157 P.3d 397 (2007).

Second, the HCA points to provisions, most recently in the 2025 operating budget, directing the HCA not to cover prescription drugs to treat obesity or weight loss because of the insufficiency of the funding rate for insurance benefit premiums.[6] See LAWS OF 2025, ch. 424, § 909(5). But the budget does not resolve the CR 12 motions before us, because a budget bill typically is not accepted to alter substantive law. Courts have " 'repeatedly indicated the Legislature may not abolish or adopt substantive law in an appropriations bill' " and further "construed [Washington Constitution] art. II, § 19 to forbid inclusion of substantive law in appropriations bills." Wash. State Legislature v. State, 139 Wn.2d 129, 144-45, 985 P.2d 353 (1999) (quoting Wash. State Legislature v. Lowry, 131 Wn.2d 309, 328 n.11, 931 P.2d 885 (1997)).

The legislature mandated nondiscrimination in benefit design through RCW 48.43.0128. Whether the noncoverage of Simonton and Kelso's claims was discriminatory under RCW 48.43.0128 is a separate question from whether the

---

[6] The legislature is actively studying the possibility of coverage for obesity and weight loss. See LAWS OF 2025, ch. 424, § 145(11)(a) (analysis of the cost to implement an obesity treatment benefit); LAWS OF 2024, ch. 376, § 212(9) ("By December 1, 2024, the authority shall submit a report to the legislature describing options, and a recommendation, for possible future coverage in the uniform medical plan for food and drug administration approved glucagon-like peptide 1 agonists for the treatment of obesity and weight loss.").

legislature anticipated a given coverage. This is not to say the HCA's funding concern is not relevant. As already noted, RCW 48.43.0128(2) authorizes the use of "reasonable medical management techniques" and expressly does not mandate services that are not medically necessary. RCW 48.43.0128(2), (5). The exclusion for services that are not medically necessary incorporates considerations of costs and benefits, among other considerations. At the CR 12 stage, however, we accept as true Simonton and Kelso's allegation that the HCA never evaluated whether prescription drugs to treat obesity can be medically necessary, and instead arbitrarily targeted a particular disability, obesity, for noncoverage. Simonton and Kelso allege the HCA "did not engage in a 'cost-benefit' analysis to determine whether coverage for treatment related to obesity should be added" but rather excluded coverage for their claims for treatment of obesity "because it had always done so." This alleges a violation of RCW 48.43.0128.

III

We last address the viability of Simonton and Kelso's claims for breach of contract and for violation of the WLAD to enforce the alleged violation of RCW 48.43.0128. We conclude each claim may proceed.

A

Limitations in insurance contracts contrary to public policy and statute will not be enforced, but otherwise insurers are permitted to limit their contractual liability. Brown v. Snohomish County Physicians Corp., 120 Wn.2d 747, 753, 845 P.2d 334 (1993). " 'There is no longer any judicial doubt that the state may regulate insurance, so closely is that industry affected with the public interest, and

regulatory statutes become a part of the policy of insurance.  Thus, a valid statute becomes a part of and should be read into the insurance policy.' " McLaughlin v. Travelers Com. Ins. Co., 196 Wn.2d 631, 640, 476 P.3d 1032 (2020) (quoting Touchette v. Nw. Mut. Ins. Co., 80 Wn.2d 327, 332, 494 P.2d 479 (1972)).  When the insured makes a prima facie case that there is coverage, the burden is on the insurer to prove that the loss is not covered because of an exclusionary provision in the policy.  Brown, 120 Wn.2d at 758-59.

With their allegations taken as true, Simonton and Kelso adequately allege that they sought treatment for potentially covered, medically necessary services.  For the reasons discussed below concerning discrimination and the WLAD, they also adequately allege that their claims were denied based on using an exclusion in violation of a statute.  For purposes of CR 12, this adequately alleges that the denial of coverage was a breach of contract.

B

The trial court dismissed Simonton and Kelso's WLAD claim for two reasons.  First, the court explained, Simonton and Kelso argued "the challenged actions are subject to WLAD because a violation of RCW 48.43.0128 in a health benefit contract is also discrimination under RCW 49.60.030(1)."  But the trial court ruled that section 5642 was determinative of discrimination under RCW 48.43.0128, therefore there could not be a violation of RCW 48.43.0128 or the WLAD.  The HCA defends the trial court's ruling dismissing the WLAD claim on only this ground, arguing that because "state law expressly authorizes the exclusion of drugs for obesity and weight loss," it follows that "the contract

exclusion in the Uniform Medical Plan's Certificate of Coverage cannot be a valid basis of a WLAD claim." But because section 5642 does not have this legal effect, Simonton and Kelso's WLAD claims are not defeated on this basis. Discrimination in violation of RCW 48.43.0128(1)(a) may violate RCW 49.60.030(1)(e), if the elements of WLAD liability are also met.[7]

Second, the trial court ruled that Simonton and Kelso had not adequately pleaded disparate treatment based on disability in violation of RCW 49.60.030(1). Liability under the WLAD requires as one element[8] a showing "that the defendant discriminated against the plaintiff by providing treatment not comparable to the level of services provided to individuals without disabilities." Wash. State Commc'n Access Project v. Regal Cinemas, Inc., 173 Wn. App. 174, 187, 293 P.3d 413 (2013); accord Fell v. Spokane Transit Auth., 128 Wn.2d 618, 637, 911 P.2d 1319 (1996). In this court, the HCA does not attempt to defend the trial court's ruling on this ground, but we reach it because it will arise on remand.

---

[7] In contrast, to the extent the insurer is "appropriately utilizing reasonable medical management techniques" or excluding services that are not medically necessary, RCW 48.43.0128(2), (5), then the insurer does not violate RCW 49.60.030(1)(e). This is the appropriate harmonization of the two statutes, and, if harmonization were not possible, the same result that would follow from the general-specific canon of construction. See O.S.T. ex rel. G.T. v. BlueShield, 181 Wn.2d 691, 701, 335 P.3d 416 (2014).

[8] We have not identified a Washington decision describing the elements of a WLAD claim for disability discrimination in an insurance transaction. In the absence of an existing decision, the elements of this iteration of a WLAD claim must be adapted from existing decisions on disability discrimination, such as Fell v. Spokane Transit Auth., 128 Wn.2d 618, 637, 911 P.2d 1319 (1996), among others. The parties' briefing and our decision focus on the grounds on which the superior court dismissed the plaintiffs' claims. Because the parties have not specifically briefed the full articulation of the elements plaintiffs would have to meet to establish WLAD liability, we believe it is most prudent to permit the parties to brief this issue on remand.

Taking the allegations in the complaint as true, the plan arbitrarily barred coverage for certain kinds of treatment for a particular disability, for no reason more than they were to treat that disability. This does not mandate a conclusion of discrimination because of that disability, but it permits that inference. Schmitt explained, "[A] categorical exclusion of treatment for hearing loss would raise an inference of discrimination against hearing disabled people notwithstanding that it would also adversely affect individuals with non-disabling hearing loss." 965 F.3d at 949. A similar inference is present here. For those with obesity, the potential discrimination lay in the plan's allegedly arbitrary limitation on coverage for their disability, as opposed to others having different health needs. The plan covers some services to treat obesity, which runs counter to a conclusion of discrimination. Yet according to Simonton and Kelso's allegations, the exclusion for prescription drugs to treat obesity is nevertheless categorically based on nothing more than the drugs' treating that disability. This supports an inference of discrimination "because of" the presence of a disability in violation of RCW 48.43.0128(1)(a) and RCW 49.60.030(1).[9]

But a finding of discrimination is not a foregone conclusion, nor is the extent of any discrimination that may be found necessarily as far reaching as Simonton and Kelso maintain. Allowing Simonton and Kelso to proceed to discovery and attempt to prove a violation of RCW 48.43.0128 does not raise the specter forecast

---

[9] We do not limit the framing of Simonton and Kelso's claims as disparate treatment, disparate impact, proxy discrimination, or overdiscrimination. See Hegwine v. Longview Fibre Co., Inc., 162 Wn.2d 340, 353-54 n.7, 355 n.8, 172 P.3d 688 (2007); Schmitt, 965 F.3d at 958.

by the trial court that plans would have to cover "every treatment for every impairment that meets WLAD's broad definition of disability." Excluding coverage for supported clinical or cost-benefit reasons, among others, is not unlawfully discriminatory. RCW 48.43.0128(2), (5). There could be "a reasonable, nondiscriminatory reason" for the exclusion for prescription drugs for obesity, and even if Simonton and Kelso were to prevail and the exclusion had to be limited to the extent it is discriminatory, the plan could still use exclusions "based on nondiscriminatory standards" such as excluding "treatment that is experimental or has a high cost-to-benefit ratio" based on the efficacy of the treatment and its cost at the time the benefit plan became effective. Schmitt, 965 F.3d at 958. What the statute does not permit, and what the ACA was designed fundamentally to reform, is what Simonton and Kelso allege happened here—a plan's deciding not to deal with a person's disability for no reason other than "because it had always done so."

IV

We reverse and remand for proceedings consistent with this opinion.

_Birk, J._

WE CONCUR:

_Coburn, J._          _Mann, J._